Doe, Sex Offender Registry Board No. 89230 *v.* Sex Offender Registry Board.

JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 89230 *vs.*
SEX OFFENDER REGISTRY BOARD.

Suffolk. September 2, 2008. - December 12, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.[1]

*Sex Offender. Sex Offender Registration and Community Notification Act.
Constitutional Law,* Sex offender, Equal protection of laws. *Due Process of
Law,* Sex offender. *Statute,* Construction. *Administrative Law,* Hearing.
*Evidence,* Expert opinion, Sex offender. *Witness,* Expert.

This court concluded that G. L. c. 6, § 178L (1), gives the Sex Offender
   Registry Board (board) discretion to grant an indigent sex offender's mo-
   tion for funds to retain an expert witness, even though the board itself does
   not intend to rely on the testimony or report of the expert witness. [768-776]
   SPINA, J., concurring, with whom GREANEY and IRELAND, JJ., joined.
A hearing examiner of the Sex Offender Registry Board, in classifying the
   plaintiff as a level two sex offender, did not commit reversible error by
   considering the plaintiff's earlier misconduct underlying a continuance
   without a finding, where the misconduct was relevant to the issue whether
   the plaintiff's conduct was repetitive and compulsive, and where the actual
   evidence of the earlier misconduct did not constitute unreliable hearsay.
   [776-778]
In an indigent sex offender's appeal in Superior Court from a classification
   decision of the Sex Offender Registry Board (board), the judge correctly
   denied the plaintiff's renewed motion pursuant to G. L. c. 261, § 27B, for
   funds to retain an expert witness, where the plaintiff sought the funds in
   relation to the underlying administrative proceeding before the board, and
   not in connection with the proceeding pending in the court, as clearly
   required by the statute. [778-780]

CIVIL ACTION commenced in the Superior Court Department on
April 4, 2006.

Motions for judgment on the pleadings and for funds to retain
an expert witness were heard by *Regina L. Quinlan,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Brandon L. Campbell* for the plaintiff.

---

[1]Justice Greaney participated in the deliberation on this case and joined the
concurring opinion of Justice Spina, but retired before the opinion was issued.

*William H. Burke*, Special Assistant Attorney General, for the defendant.

*Larni S. Levy, Murray Kohn, Michael Nam-Krane, & Pasqua Scibelli*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

BOTSFORD, J. The plaintiff, John Doe, who is indigent, appeals from his classification by the Sex Offender Registry Board (board) as a level two sex offender. Before the board, Doe filed a motion for funds to retain an expert witness under G. L. c. 6, § 178L (1), part of the sex offender registration law, G. L. c. 6, §§ 178C-178Q (registration law); the motion was denied. Doe challenges the board's classification decision on a number of grounds, but the principal issue we consider in this appeal is Doe's challenge to the board's denial of his motion for expert funds. We conclude that § 178L (1) gives the board discretion to grant a motion for funds filed by an indigent sex offender in a case such as the present one, even though the board itself does not intend to rely on the testimony or report of an expert witness. We remand the case to the board for consideration of Doe's motion for expert funds and further proceedings.[2]

1. *Background.* Doe was classified as a level two sex offender based on convictions of open and gross lewdness and lascivious behavior in violation of G. L. c. 272, § 16; the convictions occurred in 1992 and 2003.[3] At the time of his final classification Doe was a forty-nine year old man who had suffered from bipolar disorder, manic type, for over twenty-five years. Doe, who lives with his mother, receives outpatient treatment for his mental illness through the Department of Mental Health, and takes medication under the supervision of a psychiatrist.

On April 28, 2005, the board recommended that Doe be classified as a level two sex offender on his convictions of open and gross lewdness. A level two classification is given to sex

---

[2]We acknowledge the amicus brief submitted by the Committee for Public Counsel Services in support of Doe.

[3]Under G. L. c. 6, § 178C, a person who, as an adult, is convicted on two temporally separate charges of open and gross lewdness and lascivious behavior under G. L. c. 272, § 16, qualifies as a "sex offender" who must register. The board's regulation tracks the statute. See 803 Code Mass. Regs. § 1.04(2) (2004). Doe was an adult at the time of both convictions.

offenders whose risk of reoffense is moderate. See G. L. c. 6, § 178K (2) (*b*).[4] On May 12, 2005, Doe made a timely request for a de novo hearing to challenge his classification. See G. L. c. 6, § 178L (1) (*c*); 803 Code Mass. Regs. § 1.07 (2004). Doe also requested that an attorney be appointed to represent him at the hearing. See G. L. c. 6, § 178L (2); 803 Code Mass. Regs. § 1.08 (2004). The board determined that Doe was indigent, granted his request that counsel be appointed, and scheduled a de novo hearing for November 16, 2005.

On November 1, 2005, through his attorney, Doe filed a motion for funds to retain an expert witness to assist him on specific issues related to his classification.[5] Doe also filed a motion to exclude records related to allegations of sexual misconduct that did not result in convictions. On November 14, 2005, the hearing examiner denied Doe's motion for expert funds, stating that the "motion may be re-filed if the Board, in fact, introduces testimony and/or a report from its own expert witness which shall have been prepared specifically for the purposes of the classification hearing." See G. L. c. 6, § 178L (1); 803 Code Mass. Regs. § 1.09(2) (2002). The hearing examiner took Doe's motion to exclude certain records of alleged sexual misconduct under advisement.

The hearing examiner conducted the requested de novo hearing on November 16, 2005. See G. L. c. 6, § 178L; 803 Code Mass. Regs. §§ 1.10-1.21 (2002). The board presented no witnesses, expert or otherwise, but offered in evidence the board's April 28, 2005, classification report along with ten attachments.[6]

Doe did not testify at the hearing. He presented as evidence a

---

[4]The classification level received by a registered sex offender determines how much information about the offender is made available to the public and the ease with which the public can access the information. See 803 Code Mass. Regs. §§ 1.28-1.30 (2004). A level two sex offender's name, home address, work address, photograph, and sex offense convictions are made available to the adult public by request at local police stations. See G. L. c. 6, §§ 178I, 178J (*c*); 803 Code Mass. Regs. § 1.29.

[5]The motion is discussed in more detail in part 2, *infra.*

[6]The classification report and its attachments contained the following: Doe's criminal history systems board records (State and interstate) (attachment 1); a 1991 Belmont police department report and corresponding Cambridge District Court docket sheet (attachments 2-3); a 1992 Watertown police department report and corresponding Waltham District Court docket sheet (attach-

letter from the director of an agency providing vocation rehabilitation services; a letter from the assistant director of clinical services at the Elliot Center, where Doe was receiving weekly therapy and medication for his mental illness; two letters from friends; and two studies on recidivism.[7] Doe called his mother as a witness; she testified, inter alia, that he had been on medication since 1992 and that there were no incidents of sexual misconduct between 1992 and 2003.

On February 27, 2006, the hearing examiner issued a written decision in which he found that Doe "poses a moderate danger to the public and a moderate risk to re-offend" and ordered him to register as a level two sex offender. In his decision, the hearing examiner adopted his prehearing ruling denying Doe's motion for expert funds (because the board had not presented an expert witness or report prepared for the classification hearing), and also denied Doe's motion to exclude records related to allegations of sexual misconduct that had not resulted in convictions.

The hearing examiner stated in his decision that "[t]he record reflects that [Doe] has suffered from bipolar disorder manic type for over [twenty-five] years," and he took administrative notice of the fact that the Diagnostic and Statistic Manual of Mental Disorders (4th ed. 2000) (DSM-IV) defines "bipolar disorder" as a type of mood disorder characterized by manic episodes. *Id.* at 345. The hearing examiner also noted that "according to the DSM-IV discussion of Manic Episode . . . '[t]he increase in goal-directed activity often involves excessive planning of . . . multiple activities (e.g. sexual . . .). Increased sexual drive, fantasies, and behavior are often present.' " He concluded his consideration of the DSM-IV with the following

ments 4-5); a 2003 Littleton police department report, letters to police, and corresponding Ayer District Court docket sheet and criminal complaint (attachments 6-7); Ayer District Court probation records, letters from treatment providers, and a 2004 criminal responsibility evaluation (attachment 8); letters submitted by Doe prior to his initial classification (attachment 9); and a 1998 Watertown police department report (attachment 10). Doe's motion to strike pages 2-6 of the classification report was allowed by assent of the parties.

[7]Hanson, Predicting Relapse: A Meta-Analysis of Sexual Offender Recidivism Studies, 66 J. of Consulting & Clinical Psychol. 2, 348 (1998); and Hanson, Predictors of Sexual Recidivism: An Updated Meta-Analysis (Public Safety and Emergency Preparedness Canada 2004).

comment: "I do not reference the learned treatise text herein to
. . . infer that the presence of a Bipolar Disorder in and of
itself creates a risk to criminally re-offend. In this case, however,
taking the totality of the record evidence and factor analysis
into account, I find that the condition serves to exacerbate the
substantial level of risk of reoffense already present in this
case."

On April 4, 2006, Doe filed a complaint for judicial review
of the board's decision in the Superior Court. G. L. c. 6, § 178M;
G. L. c. 30A, § 14. He later filed a motion for funds, pursuant
to G. L. c. 261, §§ 27A-27G, to retain an expert. Cross mo-
tions for judgment on the pleadings were thereafter filed. On
May 7, 2007, a Superior Court judge affirmed the board's de-
cision after determining that the hearing examiner's denial of
Doe's motion for expert witness funds was proper and that sub-
stantial evidence supported the level two classification. The
judge also denied Doe's motion for funds under G. L. c. 261,
§§ 27A-27G. Doe filed a timely notice of appeal, and we
granted Doe's application for direct appellate review.

2. *Discussion.* a. *Motion for expert witness funds.* Doe's mo-
tion, which he filed with the hearing examiner before the de
novo hearing, sought funds to retain an expert to provide, at least
in part, information and possibly testimony on the relationship
between his mental illness (bipolar condition) and his risk of re-
cidivism. As has been noted, the hearing examiner denied the
motion in substance because the board did not seek to introduce
any expert witness testimony or report. Although not specifically
stated in the denial, it is apparent that the hearing examiner based
his decision on the provisions of G. L. c. 6, § 178L (1). We turn
to that statute.

Section 178L (1) (c) provides in relevant part:

> "In the case of any sex offender not in custody, . . . the
> board shall promptly notify such sex offender of the board's
> recommended sex offender classification, his duty to reg-
> ister, if any, and his right to petition the board to request
> an evidentiary hearing to challenge such classification and
> duty, his right to retain counsel to represent him at such
> hearing and his right to have counsel appointed for him if
> he is found to be indigent as determined by the board us-

ing the standards under chapter 211D; *provided, however, that such indigent offender may also apply for and the board may grant payment of fees for an expert witness in any case where the board in its classification proceeding intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding . . .*" (emphasis supplied).[8]

See 803 Code Mass. Regs. § 1.06 (2004).[9]

Doe reads § 178L (1) to mean that a hearing examiner may grant an indigent petitioner's motion for funds to retain an expert *only* if the board intends to rely on "the testimony or report of an expert witness prepared specifically for the purposes of the classification hearing." He points out, correctly, that the board did not intend to rely on such an expert witness in his case, and further contends that the board has never sought to rely on such expert evidence in a classification hearing. Doe argues that as a result, no indigent sex offender may obtain funds to retain an expert witness, and that § 178L (1), so read, violates his Federal and State constitutional rights to equal protection and due process.

In particular, Doe argues that his right to equal protection is violated because unlike indigent sex offenders, nonindigent sex offenders are permitted to present expert testimony and reports to challenge the board's recommended classification at the evidentiary hearing provided under § 178L (1), to meaningful effect, and there is no rational basis for this distinction between nonindigent and indigent offenders.[10] With respect to due process, Doe contends that he has a liberty interest at stake in his clas-

---

[8]General Laws c. 6, § 178L (1) (*c*), applies to sex offenders who, like Doe, are not in custody at the time the board notifies them of its proposed sex offender classification level, while § 178L (1) (*a*) applies to sex offenders who are incarcerated or in custody at the time of the notification by the Sex Offender Registry Board (board). The two provisions contain identical language concerning applications for payment of expert fees.

[9]The board's regulation, 803 Code Mass. Regs. § 1.09(2), essentially tracks the language of § 178L (1) on applications for expert fees: "In the event that the board intends to rely on the testimony or report of an Expert Witness and the sex offender has been found to be indigent, the board shall notify the offender or his Authorized Representative that he may apply for and the board may grant the payment of fees for an expert witness."

[10]See *English* v. *New England Med. Ctr., Inc.,* 405 Mass. 423, 429 (1989), cert. denied, 493 U.S. 1056 (1990), quoting *Cleburne* v. *Cleburne Living Ctr.,*

sification proceedings; his liberty interest is violated by a proce-
dure that does not ensure, to the extent possible, the accuracy of
his classification; and his inability to use expert evidence fatally
injures his chances of receiving an accurate classification.[11]

The board also reads § 178L (1) to authorize the board to
grant expert funds to an indigent petitioner only if the board itself
intends to rely on expert evidence prepared specifically for the
proceeding. The board concedes that it did not rely on evidence
provided by an expert witness in this case and generally does not.
Relying on, inter alia, *Boston* v. *Keene Corp.*, 406 Mass. 301,
309 (1989), the board asserts that Doe's equal protection argu-
ment fails because the Legislature had a rational basis, involving
cost and efficiency considerations, for limiting expert funds for
indigent petitioners to cases in which the board intends to call an
expert witness. With respect to due process, the board argues that
Doe's liberty interests are limited; that existing procedural safe-
guards in the classification process were and are sufficient to
safeguard this limited liberty interest; and that increasing the
amount of expert assistance available to indigent offenders would
be costly, inefficient, and of limited value.[12]

We need not resolve the issue whether, as interpreted by both
Doe and the board, § 178L (1) violates Doe's equal protection
or due process rights because we read the statute to provide the
board with the discretion to grant an indigent petitioner's mo-
tion for expert witness funds in circumstances beyond those in
which the board intends to rely on an expert witness or report
prepared specifically for the classification hearing. See *Neff* v.
*Commissioner of the Dep't of Indus. Accs.*, 421 Mass. 70, 72-
73, 76-77 (1995) (avoiding constitutional question by reading
workers' compensation statute to confer on commissioner author-

---

*Inc.*, 473 U.S. 432, 452 (1985) (Stevens, J., concurring) (discriminatory clas-
sification will withstand rational basis test if "impartial lawmaker could logi-
cally believe that the classification would serve a legitimate public purpose
that transcends the harm to the members of the disadvantaged class").

[11] See *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*,
428 Mass. 90 (1998), and *Doe* v. *Attorney Gen.*, 426 Mass. 136, 143-144
(1997), cited by Doe.

[12] See *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry
Bd.*, 447 Mass. 768, 777 (2006), and *Doe, Sex Offender Registry Bd. No. 1211*
v. *Sex Offender Registry Bd.*, 447 Mass. 750, 759 (2006), cited by the board.

ity to grant indigent individuals waivers of statutory appeal fee despite absence of express statutory waiver provision).

Section 178L (1) specifically identifies one situation in which the board may grant expert funds to an indigent sex offender, but nothing in the language of the statute prohibits or precludes the board from granting fees to retain an expert witness in other situations. Nor has our review of the legislative history of the 1999 registration law, St. 1999, c. 74, of which § 178L (1) was a part, revealed any evidence of an underlying legislative intent that the board confine the allowance of such funds to the single circumstance where the board intends to rely on expert witness testimony.[13] We reach this conclusion mindful of the principle that a "statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Commonwealth* v. *Joyce*, 382 Mass. 222, 226 n.5 (1981), quoting *Globe Newspaper Co.* v. *Superior Court*, 379 Mass. 846, 853, vacated and remanded on other grounds, 449 U.S. 894 (1980), *S.C.*, 383 Mass. 838, rev'd, 457 U.S. 596 (1982); *Worcester County Nat'l Bank* v. *Commissioner of Banks*, 340 Mass. 695, 701 (1960). Cf. *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 98 (1998) (where right to due process entitled sex offenders to evidentiary hearing on appropriateness of risk classification but 1996 version of registration statute did not provide for such hearing, court would not strike statute but would prescribe evidentiary hearings to carry out legislative intent that there be viable risk classification procedure).

It is consistent with the purpose and structure of the registration law to read § 178L (1) to authorize the board to grant an application for expert witness funds in situations beyond the (to date hypothetical) case where the board intends to rely on expert evidence prepared specifically for the hearing. The purpose behind the law is the protection of "the vulnerable members of our com-

---

[13]We are aware, of course, of the maxim of statutory construction that the expression of one thing implies the exclusion of other, similar things. "However, we have also recognized that the maxim is not to be followed where to do so would frustrate the general beneficial purposes of the legislation." *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975). See *Suffolk Constr. Co.* v. *Division of Capital Asset Mgt.*, 449 Mass. 444, 457-458 (2007).

munities from sexual offenders," St. 1999, c. 74, emergency preamble, through a registration system that classifies offenders "on an individualized basis according to their risk of reoffense and degree of dangerousness," St. 1999, c. 74, § 1. See *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 784 n.8, 789-790 (2008). See also *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. 750, 760 (2006). We have recognized, however, that because the registration law implicates significant liberty interests of sex offenders, see, e.g., *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. at 790-791, it is necessary that the law be tailored to achieve its purpose and that it provide the procedural protections required by due process. See *Roe* v. *Attorney Gen.*, 434 Mass. 418, 446, 451, 455 (2001) (Marshall, C.J., concurring in part and dissenting in part); *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. at 102 (in context of sex offender registration statute due process requires that "fact finder . . . make particularized, specific, and detailed findings . . . to demonstrate that close attention has been given to the evidence as to each offender and that the classification for each is appropriate").

Pursuant to the statutory mandate spelled out in G. L. c. 6, § 178K (1), the board has promulgated guidelines "for determining the level of risk of reoffense and the degree of dangerousness posed to the public," and it uses these as the basis for deciding the classification level of each sex offender. See 803 Code Mass. Regs. § 1.40. The guidelines set out twenty-four specific factors that flesh out those identified by the Legislature in G. L. c. 6, § 178K (1), as relevant to risk classification decisions. Many of the twenty-four factors focus on matters of historical fact.[14] Three factors, however, focus on a sex offender's mental or physical condition, and specifically reference assessments and opinions of licensed health care professionals.[15] Thus the board

---

[14]By way of illustration, there are factors that consider, for example, whether the sex offender's victim was a child or a family member, friend or stranger; the age of the sex offender when he committed his first sex offense; whether the sex offender had been adjudicated a sexually dangerous person; and the dates, number, and nature of the sex offender's prior offenses. 803 Code Mass. Regs. § 1.40(3), (4), (5), (9).

[15]Thus, factor one (mental abnormality) "seeks to identify the offender who

itself has indicated that the proper use of these three factors in the classification process requires professional or expert opinions. It goes without saying that the validity and significance of a particular expert opinion are often subject to debate. When the classification of a particular sex offender implicates one or more factors, the accuracy of the classification decision may well be enhanced by the addition to the evidentiary record of additional expert evidence in the form of testimony or reports.[16] In this regard, we note that although the registration law requires the board itself to include among its seven members at least three licensed psychologists or psychiatrists with "special expertise in the assessment and evaluation of sex offenders" and "knowledge of the forensic mental health system," G. L. c. 6, § 178K (1), the evidentiary classification hearing may be conducted by an

falls within a range of mental disorders that makes the offender more likely to commit sexual offenses" and focuses on "a documented clinical assessment from a licenced mental health professional that indicates a diagnosis of a Mental Abnormality that can be linked to sexual recidivism, such as pedophilia or sexual sadism" (803 Code Mass. Regs. § 1.40[1]); factor thirteen (physical condition) "seeks to identify those offenders who, due to a debilitating condition, are not likely to be a risk or danger to the community" and directs the board to "give consideration to the offender who has an illness or condition that is documented by a licensed, practicing medical doctor who attests that the illness or condition is chronic and substantially minimizes the likelihood of reoffense and degree of dangerousness posed by the offender" (803 Code Mass. Regs. § 1.40[13]); and factor fifteen (psychological or psychiatric profiles indicating risk to reoffend) "considers whether documentation has been obtained from a licensed mental health professional that specifically indicates that a particular sex offender posed or poses a risk to reoffend" and also directs the board "to give consideration to the offender whose file contains documentation from a licensed mental health professional specifically indicating that he posed or poses no risk to reoffend . . . [or] a risk to reoffend" (803 Code Mass. Regs. § 1.40[15]).

[16]Previous decisions of this court as well as the record in this case reflect support for the point that expert evidence may have a substantive impact on the classification decision. See, e.g., *Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd.*, 447 Mass. at 753-755 (board recommended level two classification; after de novo hearing at which expert psychologist testified for [nonindigent] sex offender, hearing examiner decided level one classification appropriate). With respect to the record in this case, an affidavit provided by an attorney who has represented nonindigent sex offenders in nine classification proceedings references several cases where, after de novo hearings in which expert witnesses testified for the sex offender, the hearing examiner found a classification level different from the board's recommended classification to be appropriate.

individual board member or hearing examiner who is not required to have any such expertise or even training. See G. L. c. 6, § 178L (2). Moreover, under the board's regulations, the board member's or hearing examiner's decision automatically becomes the final decision of the board without any further review. 803 Code Mass. Regs. § 1.23 (2004). As this court has stated, with reference to the statutory classification process, "[i]t is in everyone's best interests — including the best interests of sex offenders themselves — that the board work from accurate, up to date, and thorough information." *Roe* v. *Attorney Gen.*, 434 Mass. at 430.

The conclusion that the board has the discretion to grant an indigent petitioner's motion for expert witness funds even where the board does not intend to use expert evidence is consistent with our decision in *Doe, Sex Offender Registry Bd. No. 10216* v. *Sex Offender Registry Bd.*, 447 Mass. 779, 785-786 (2006). The plaintiff sex offender in that case argued that the board was required to base its classification decision on expert testimony because sex offender recidivism predictions and the assessment of an offender's risk level are "beyond the ken of the fact finder." *Id.* at 784. We disagreed, stating that the language of § 178L (1), insofar as it "uses the permissive word 'may' in relation to the use of expert witnesses in classification proceedings, clearly indicates that the Legislature intended the use of experts to be discretionary, not mandatory." *Id.* at 785. We were referring to the discretionary use of experts by the board because that was the issue raised, but we were focusing on precisely the same language in § 178L (1) (*a*) that we consider in this case, namely, "the board may grant payment of fees for an expert witness in any case where the board in its classification proceeding intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding." We hold today that this language also signifies that the board has discretion to grant funds to an indigent sex offender for an expert witness or report, whether or not the board itself intends to rely on this type of expert evidence.

The board argues that the cost of providing funds for indigent sex offenders to retain experts will be prohibitively high. However, the argument appears to be premised on an assumption

that in *every* registration case involving an indigent sex offender, the board will be required to grant funds for an expert. That is not the case for at least two reasons. First, it appears that of the many sex offenders who are required to register and for whom the board prepares a recommended classification, a considerable number do not seek a de novo hearing, and thus are not in a position to ask for expert witness funds. Second, the decision whether to grant an individual sex offender funds for an expert is a discretionary one, to be based on the facts presented in an individual case.

As indicated previously, of the many factors included in the board's classification guidelines, there are three — factors 1, 13, and 15 (see note 15, *supra*) — that appear to us to concern issues for which expert evidence presented on behalf of the sex offender may be most relevant and material. Moreover, in moving for expert witness funds, the burden will be on the sex offender to identify and articulate the reason or reasons, connected to a condition or circumstance special to him, that he needs to retain a particular type of expert. A general motion for funds to retain an expert to provide an opinion on the sex offender's risk of reoffense, without more, would appear to be insufficient.[17]

In the case before us, Doe asserted in his motion for expert funds that "indigency prevents him from addressing evidence concerning his mental health status available to the board." Because the hearing examiner did not appear to believe he had discretion to allow the motion in light of the board's intention not to use an expert witness at the de novo hearing, there is no indication that he considered the motion on its merits.

A remand to the board for such consideration is appropriate. We make this determination because Doe's motion focused on an issue that (1) is particular to him — the relationship of his long-standing bipolar disorder to the risk of recidivism, (2) is not a matter of common knowledge or experience, and (3) clearly had a bearing on Doe's classification, at least in the opinion of the hearing officer, as demonstrated by his use of the DSM-IV's

---

[17] What we state here is offered to provide some guidance, but of course it will be up to the board in the first instance to determine how best to exercise its discretion with respect to ruling on motions by indigent sex offenders for funds to retain experts.

discussion of bipolar disorder.[18] The DSM-IV itself cautions against the use of its diagnostic criteria and descriptions by individuals who are not clinically trained[19] or for purposes other than diagnosis.[20] In seeking to arrive at an accurate assessment of Doe's particular risk level in this case, the board might greatly benefit from testimony or a report by an appropriately trained and qualified mental health professional on the issue of Doe's bipolar disorder — or at least the board should consider whether it might so benefit.

We turn to two issues that may arise on remand.[21]

b. *Consideration of evidence of sex offenses not resulting in convictions.* Doe argues that the hearing examiner committed reversible error in considering two alleged incidents of sexual misconduct that did not lead to convictions. The first related to allegations that in June, 1991, two thirteen year old girls had seen Doe standing in a doorway and touching his exposed penis. Based on these allegations, Doe had been charged with open and gross lewdness and lascivious behavior in violation of G. L. c. 272, § 16, but thereafter Doe admitted to sufficient facts

---

[18]After discussing the description of bipolar disorder in the Diagnostic and Statistic Manual of Mental Disorders (4th ed. 2000) (DSM-IV), the hearing examiner found that Doe's bipolar condition — manic type — "serves to exacerbate the substantial level of risk of reoffense already present in this case." In making this finding, the hearing examiner appears to have assumed the role of an expert in bipolar disorder, which is not appropriate. See notes 20 and 21 and accompanying text, *infra.*

[19]The record indicates that the hearing examiner in Doe's case appears to have had no mental health training beyond an undergraduate degree in psychology.

[20]The preface to the DSM-IV includes the following: "The diagnostic categories, criteria, and textual descriptions [of the DSM-IV] are meant to be employed by individuals with appropriate clinical training and experience in diagnosis" (DSM-IV at xxxii), and "[w]hen the DSM-IV categories, criteria, and textual descriptions are employed for forensic purposes, there are significant risks that diagnostic information will be misused or misunderstood" (DSM-IV at xxxii-xxxiii).

[21]In addition to the two issues we next discuss, it is possible that use of DSM-IV by the hearing examiner may be an issue on remand. It seems inappropriate for the board or a hearing examiner to use or reference the DSM-IV in its assessments of an offender's risk of reoffense, at least without the benefit of testimony or a report by an expert with appropriate psychiatric or psychological training and experience. We do not give further consideration to this issue.

concerning the charge, and it was continued without a finding and later dismissed. The second alleged incident concerned a June, 1991, report to the police by a female neighbor of Doe's that she had observed him waving obscene pictures from his apartment window while children were walking by.

The hearing examiner described these two alleged incidents in his decision. He found that Doe's 1991 open and gross lewdness charge that was continued without a finding related to misconduct similar to that underlying the 1992 and 2003 convictions that formed the basis of the requirement that Doe register as a sex offender; he also stated that the alleged misconduct could be seen as "consistent with a pattern of behavior as tends to lend credibility to the victims' [of the 1992 and 2003 incidents] already detail[ed] accounts." At a later point in the decision, he "accept[ed] [the evidence of the charge that had been continued without a finding] as useful information tending to prove that in the era of 1991-1992 [Doe] exhibited poor judgment manifest[ed] by an inability to maintain appropriate behavioral boundaries with children."[22]

There was no error in the hearing examiner's use of Doe's 1991 continuance without a finding (CWOF). While a hearing examiner may not consider a CWOF a "prior offense" in relation to the classification factor that looks at the dates, number, and nature of prior offenses,[23] he is permitted to take into account the misconduct underlying the CWOF on the issue whether the sex offender's conduct was repetitive and compulsive. See *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. at 764-765 & n.12. The hearing examiner followed these guidelines, never mentioning the CWOF as a separate prior charge, but rather viewing the underlying conduct

---

[22]The hearing examiner never made any findings about, and never mentioned again, the alleged incident involving the showing of "obscene pictures." It thus appears that this alleged incident had no bearing on the decision, and we do not consider it.

The hearing examiner did describe one additional incident of sexually related misconduct that was alleged to have occurred in 1998, but later stated that because the criminal charge of indecent exposure that grew out of the incident was dismissed, he would not consider it. Doe makes no argument concerning the 1998 incident.

[23]See G. L. c. 6, § 178K (1) (*b*) (iii); 803 Code Mass. Regs. § 1.40(9).

(1) as suggesting a pattern of behavior; and (2) inferentially, as supporting his finding that Doe exhibited a compulsive and impulsive choice of "multiple stranger victims."

Doe also argues that even if the hearing examiner in theory could consider the conduct underlying Doe's CWOF on the issue of repetitive and compulsive behavior, he could not do so in this case because the actual evidence constituted unreliable hearsay. We disagree. As the Superior Court judge noted, "[a] CWOF means that Doe admitted, and a sentencing judge found, that the prosecution had sufficient facts to warrant a finding of guilty. *Commonwealth* v. *Duquette*, 386 Mass. 834, 845 (1982)."[24] Moreover, the police report of the incident that ultimately resulted in the CWOF, in reporting the victims' observations, contained a level of detail that supports its reliability. See *Covell* v. *Department of Social Servs.*, 439 Mass. 766, 786 (2003) (in conducting adjudicatory proceeding, administrative agency entitled to rely on hearsay so long as it "has indicia of reliability").

c. *Motion for funds under G. L. c. 261, §§ 27A-27G, in the Superior Court.* In connection with his appeal from the board's classification decision to the Superior Court, Doe filed and then renewed a motion pursuant to G. L. c. 261, § 27B,[25] for $3,000 in funds to retain an expert witness. The judge denied the motion, reasoning that any funds sought under § 27B must relate to a pending trial or appeal, and that the funds Doe sought related to the underlying administrative proceeding before the board — because Doe had indicated that if the motion for funds were allowed, he would move "for leave to present additional mitigating evidence to the board."

The judge's ruling was correct. Doe's civil action in the Superior Court was in substance an appeal, under G. L. c. 6,

---

[24]*Commonwealth* v. *Duquette*, 386 Mass. 834 (1982), has since been superseded by G. L. c. 278, § 18. See *Commonwealth* v. *Rotonda*, 434 Mass. 211, 216 (2001).

[25]General Laws c. 261, § 27B, provides in part: "Upon or after commencing . . . any civil, criminal or juvenile proceeding or appeal in any court, including but not limited to civil actions, . . . any party may file with the clerk an affidavit of indigency and request for waiver, substitution or payment by the commonwealth of fees and costs upon a [prescribed] form . . . and in accordance with the standards set forth in [G. L. c. 261, §§ 27C to 27F], inclusive, and sworn to under oath by the affiant."

§ 178M, and c. 30A, § 14, from the board's adjudicatory decision. It is true, as Doe argues, that § 27B by its terms applies to both civil actions and appeals, and that the general legal definition of an "appeal" includes a reference to an appeal from a decision of an administrative agency.[26] Nevertheless, the statutory scheme governing indigent fees and costs, G. L. c. 261, §§ 27A-27G, read as a whole, makes clear that it is concerned with fees and costs that relate directly to the prosecution or defense of actions and appeals pending in a court. Thus, the definition of "[n]ormal fees and costs" in § 27A refers solely to fees and costs connected to court proceedings, and the term "[e]xtra fees and costs" is defined in the same section to include fees that are required for or at least connected to the prosecution or defense of the party's "case." Section G. L. c. 261, 27C (4), in turn, states that if the court finds a person indigent, the court "shall not deny any request with respect to extra fees and costs if it finds the document, service or object is reasonably necessary to assure the applicant *as effective a prosecution, defense or appeal as he would have if he were financially able to pay*" (emphasis supplied). The point of focus in each of these provisions is on fees and costs necessary or appropriate for conducting the actual proceeding pending in a court, not an underlying adjudicatory proceeding before an administrative agency. See *Commonwealth* v. *Davis*, 410 Mass. 680, 684 (1991) (after unsuccessful direct appeal, convicted defendant sought fees pursuant to G. L. c. 261, § 27C [4], to conduct DNA testing on certain trial evidence to support a motion for new trial; court held motion "not cognizable under . . . § 27C [4], because the funds sought are not related to a pending trial or appeal").[27]

Doe's request for funds from the Superior Court is similar to

[26]See *Commonwealth* v. *Davis*, 410 Mass. 680, 684 n.6 (1991) (referencing definition of "appeal" as " '[r]esort to a superior [i.e. appellate] court to review the decision of an inferior [i.e. trial] court or administrative agency.' Black's Law Dictionary 96 [6th ed. 1990]"). See also *Commonwealth* v. *De'Amicis*, 450 Mass. 271, 276 (2007), quoting Black's Law Dictionary 105 (8th ed. 2004) (" 'appeal' . . . is 'undertaken to have a decision reconsidered' by a higher court").

[27]In 2001, after *Commonwealth* v. *Davis*, 410 Mass. 680 (1991), was decided, the court rewrote Mass. R. Crim. P. 30 (c) (5), as appearing in 435 Mass. 1501 (2001), to authorize allowance of funds to pay costs associated with motions for new trial. This criminal rule amendment has no application to Doe, however.

the defendant's motion for funds in *Commonwealth* v. *Davis*, *supra*. Doe sought the funds in order to obtain an expert report and perhaps expert testimony that would not be used directly for the Superior Court action but would rather serve as the basis for a motion under G. L. c. 30A, § 14 (6),[28] requesting the judge to order the board to reopen the completed classification hearing so that it might consider the new expert evidence and, perhaps, modify its decision. There is no coverage under G. L. c. 261, §§ 27A-27G, for this type of fee request.

3. *Conclusion.* This matter is remanded to the board for further proceedings consistent with this opinion.

*So ordered.*

SPINA, J. (concurring, with whom Greaney and Ireland, JJ., join). I agree with the opinion of the court, but write to discuss a different aspect of this case that may well reflect a pervasive impropriety in the way these cases are decided. In notes 18, 20, and 21, *ante* at 776, the court states that the hearing officer improperly relied on the Diagnostic and Statistic Manual of Mental Disorders (4th ed. 2000) (DSM-IV) in the assessment of Doe's risk to reoffend, and that in doing so he appears to have assumed the role of expert. When a hearing examiner acts both as expert and as fact finder it is doubtful that his impartiality as fact finder can remain uncompromised.

This court has admonished administrative entities that "[a] board of experts, sitting in a quasi-judicial capacity, cannot be silent witnesses as well as judges." *Arthurs* v. *Board of Registra-*

---

[28]General Laws c. 30A, § 14 (6), reads:

"If application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material to the issues in the case, and that there was good reason for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings and decision by reason of such additional evidence and shall file with the reviewing court, to become part of the record, the additional evidence, together with any modified or new findings or decision."

*tion in Med.*, 383 Mass. 299, 310 (1981), quoting *New Jersey State Bd. of Optometrists* v. *Nemitz*, 21 N.J. Super. 18, 28 (1952). This principle is rooted in principles of due process, see *New Jersey State Bd. of Optometrists* v. *Nemitz, supra*, particularly the need to create a record to permit appellate review. See, e.g., *Arthurs* v. *Board of Registration in Med., supra*, quoting *Baltimore & Ohio R.R.* v. *Aberdeen & Rockfish R.R.*, 393 U.S. 87, 92 (1968). Whatever expertise an agency may possess, the record of an adjudicatory hearing must reflect the evidence on which the agency relies. Technical or specialized facts must be supported by expert testimony, or taking official notice of facts under G. L. c. 30A, § 11 (5).[1] Agency expertise is no substitute for necessary evidence. See *D'Amour* v. *Board of Registration in Dentistry*, 409 Mass. 572, 585 (1991) (board's decision not supported by substantial evidence where board substituted its expertise for evidence without putting in record basis for its expertise); *Morris* v. *Board of Registration in Med.*, 405 Mass. 103, 113, cert. denied, 493 U.S. 977 (1989) (agency could not discount magistrate's negative credibility findings by merely professing expertise in dynamics of psychiatrist-patient relationship). Although an agency may not use its expertise to build the case for or against a litigant, it may apply its expertise to evaluate the evidence. See *Arthurs* v. *Board of Registration in Med., supra*; *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 381 (1985).

The hearing examiner's recourse to the DSM-IV in this case poses certain additional problems. First, the hearing examiner's familiarity with cases involving sex offender registration and classification does not qualify him to provide expert opinions in such cases. Where he lacked psychiatric or psychological

---

[1] General Laws c. 30A, § 11 (5), states:

"Agencies may take notice of any fact which may be judicially noticed by the courts, and in addition, may take notice of general, technical or scientific facts within their specialized knowledge. Parties shall be notified of the material so noticed, and they shall be afforded an opportunity to contest the facts so noticed. Agencies may utilize their experience, technical competence, and specialized knowledge in the evaluation of the evidence presented to them."

This section applies to sex offender proceedings. See G. L. c. 30A, § 1 (2) (enumerating State entities to which G. L. c. 30A does not apply).

expertise, the hearing examiner was not qualified to opine how Doe's bipolar disorder might bear on his risk of reoffense. See *Ross* v. *Gardner*, 365 F.2d 554, 558 (6th Cir. 1966) (error for social security hearing examiner to disregard uncontradicted expert medical opinion evidence, undertake scientific research of his own, and decide case on what he thought medical text meant). Cf. *Morris* v. *Board of Registration in Med.*, *supra* at 113 (board's professed expertise in dynamics of psychiatrist-patient relationship insufficient to discount credibility findings of administrative magistrate). But see *McDaniel* v. *Celebrezze*, 331 F.2d 426, 428-429 (4th Cir. 1964) (social security appeals council may use medical publications to explain or refute expert medical opinions as long as claimant is given opportunity to challenge and contradict such publications).

A second problem is the hearing examiner's apparent failure to provide notice to Doe of his intention to use the DSM-IV or to give Doe an opportunity to present evidence to refute the hearing examiner's determination that his bipolar condition "exacerbate[d] the substantial level of risk to reoffense already present in this case," as required by G. L. c. 30A, § 11 (5). In the absence of Doe's opportunity to respond, the hearing examiner's reliance on the DSM-IV was error. See *New York Cent. R.R.* v. *Department of Pub. Works*, 354 Mass. 332, 336 (1968) (facts not properly before department where petitioner did not have opportunity to contest facts). The significance of this error is magnified because the hearing examiner's consideration of Doe's bipolar disorder on his risk of reoffense raises a disputable and critical factual question, which requires that Doe be afforded greater procedural protection. See 2 R.J. Pierce, Jr., Administrative Law § 10.6, at 754 (4th ed. 2002) (suggesting that when facts are specific to parties, "adjudicative, disputed and critical, nothing less than the opportunity to present evidence at a hearing will normally suffice"); 2 C.H. Koch, Administrative Law and Practice § 5.55, at 207 (2d ed. 1997) ("where an adjudicative fact is crucial to the central factual controversy in an adjudication, it must, of course, be proven through traditional methods"). Because the hearing examiner introduced facts from the DSM-IV that bore on the ultimate issue, the hearing examiner's use of the DSM-IV and the conclusion he drew therefrom amounted to reli-

ance "on the testimony or report of an expert witness prepared specifically for the purposes of the classification proceeding." G. L. c. 6, § 178L (1) (*c*). Accordingly, Doe's application for funds to retain an expert witness should have been considered.