NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1842                                    Appeals Court

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 356011  vs.  SEX OFFENDER REGISTRY BOARD.


No. 13-P-1842.

Suffolk.     January 7, 2015. - August 18, 2015.

Present:  Kafker, Meade, & Maldonado, JJ.


Sex Offender.  Sex Offender Registration and Community Notification Act.  Constitutional Law, Sex offender.  Due Process of Law, Sex offender.  Administrative Law, Hearing. Evidence, Expert opinion, Sex offender, Police report. Witness, Expert.



Civil action commenced in the Superior Court Department on February 1, 2013.

The case was heard by Jeffrey A. Locke, J., on a motion for judgment on the pleadings.


Eric Tennen for the plaintiff.
David L. Chenail for the defendant.


MALDONADO, J.  Following Doe's 2011 conviction for indecent assault and battery on a person fourteen years of age or older,[1]

---

[1] Doe "groped" a female correction officer in "her crotch area" during one of his incarcerations.

the Sex Offender Registry Board (SORB) notified Doe that he would be required to register as a level three sex offender. Doe obtained de novo administrative review pursuant to G. L. c. 6, § 178L.  Neither party called any witnesses, and the de novo hearing proceeded on the basis of documentary evidence, which included, among other things, classification records containing a summary of Doe's disciplinary reports and a police report that described sexual assault allegations of which Doe was acquitted.  The hearing examiner (examiner) found this hearsay evidence probative of Doe's repetitive and compulsive sexual history, and he classified Doe as a level three sex offender.  Doe appeals from a Superior Court judgment affirming this classification.  He asserts the examiner erred by considering both the disciplinary history set forth in his classification records and the police report of acquitted conduct.  Doe also challenges the denial of his request for expert funds relative to his age as a mitigating factor.  We affirm.

Background.  The examiner based Doe's level three classification on multiple statutory factors, see G. L. c. 6, § 178K(1), including his sexual history and compulsive sexual behavior (803 Code Mass. Regs. § 1.40[2] [2002]), his criminal

history[2] -- particularly as it related to a history of nonsexual violent offenses -- (803 Code Mass. Regs. § 1.40[9][b], [c][6] [2002]), his poor incarceration behavior (803 Code Mass. Regs. § 1.40[19] [2002]),[3] and his noncompliance with conditions of probation (803 Code Mass. Regs. § 1.40[20] [2002]).[4]  The examiner also explicitly rejected Doe's claim that his age of forty-nine years was a mitigating factor.

In assessing Doe's sexual propensities, the examiner relied on several incidents.  Aside from the 2011 sexual assault index offense, the examiner found, from the history of disciplinary reports documented in Doe's prison records, that in 1992 Doe

---

[2] The examiner found that Doe's "lengthy criminal history began in 1979 and includes numerous convictions for property crimes, motor vehicle crimes, . . . and non-sexual violent crimes,"  with convictions "in September 1995 for assault with intent to rob (three counts), and unarmed robbery; in June 1999 for assault and battery; in April 2002 for threatening and violation of an abuse prevention order; in July 2004 for assault and battery with a dangerous weapon (two counts); and in October 2006 for assault and battery on [a] correctional officer (three counts)."

[3] The examiner found that Doe has had four separate periods of incarceration:  a nine to ten year sentence beginning in 1988; a three years to three years and one day sentence beginning in 1995; a three years to three years and one day sentence in 2000; and a period of incarceration from 2004-2012. Doe incurred nineteen disciplinary reports during his first incarceration; zero in his second incarceration; seven in his third incarceration; and at least five in his last period of incarceration.

[4] The examiner found that Doe was found in violation of his probation on six occasions between 1977 and 2000.

"brushed his hand against a female correctional officer's buttocks" and "grabbed a female nurse's . . . crotch area."  The examiner noted that Doe "was not charged with any sex crimes regarding [these] interactions."  He "nevertheless f[ound] by a preponderance of the evidence that [Doe] in fact inappropriately touched the two women as they alleged."  The examiner also found probative the information pertaining to a disciplinary report Doe incurred in the year 2000 "for exposing his genitals to a female correctional officer."  Doe was again not prosecuted criminally for the incident, but based upon the narrative contained in Doe's classification records, the examiner found "by a preponderance of evidence that [Doe had] exposed himself to" a female correction officer.  The disciplinary reports themselves were not in evidence.  The examiner relied upon the information documented in the incarceration history portion of Doe's prison "Classification Report."[5]

The examiner also credited statements contained in a police report from Doe's 1999 arrest on charges, of which he was ultimately acquitted, for assault with intent to rape, assault and battery, and indecent assault and battery on a person over

---

[5] Also in the record is what appears to be a copy of a computer printout of similar records; the language contained in the computer printout mirrors verbatim the language in the classification report.

the age of fourteen.  The police report that recounts the

victim's claim states:

> "[T]he suspect [who she had been introduced to and had
> drinks with the night before] [remained] in [her] building
> all night and wouldn't leave.  Just after 5 A.M. he knocked
> on her door, [and] she let him in to use the phone, which
> he did.  When the suspect hung up the phone he wouldn't
> leave.  He proceeded to grab the victim's breasts and
> vagina, through her clothing, while stating 'I told you,
> you want me.'  She told him 'Please don't do that' and 'no'
> repeatedly.  He then grabbed her by the throat and pushed
> her into the bedroom onto her bed and said 'shut the fuck
> up' and 'stay the fuck here.'  He then went to the hallway
> to retrieve the victim's dog that had run out while the
> door was ajar.  He returned to find that the victim had
> locked herself in her bedroom and was on the phone with
> [the Lowell Police Department].  He fled on foot before
> [the police's] arrival."

The examiner again recognized that Doe "was not convicted of

these offenses" but nevertheless found that the police report

was sufficiently "detailed and consistent with [Doe's] behavior

[as] reported by the Victim of his governing offense and the

other complaints[,]" so as to render it probative of "further

evidence of sexual misconduct."

Discussion.  1.  Standard of review.  "To determine the

validity of an agency's decision, the reviewing court must

determine whether the decision is supported by substantial

evidence."  Doe, Sex Offender Registry Bd. No. 10216 v. Sex

Offender Registry Bd., 447 Mass. 779, 787 (2006).  "The decision

may only be set aside if the court determines that the decision

is unsupported by substantial evidence or is arbitrary or

capricious, an abuse of discretion, or not in accordance with law." Ibid., citing G. L. c. 30A, § 14(7)(e), (g). "An appeal from a classification decision by the board is pursuant to G. L. c. 30A, § 14, and is confined to the administrative record." Doe, Sex Offender Registry Bd. No. 10304, 70 Mass. App. Ct. 309, 311 (2007) (Doe, No. 10304). We "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., supra, quoting from G. L. c. 30A, § 14(7).

2. Incarceration history of disciplinary reports. Doe contends the examiner abused his discretion in admitting and crediting the disciplinary report history of sexual misconduct documented in his prison classification records. Doe asserts that the secondary report of the incidents in Doe's prison classification records constitutes multilevel hearsay for which there is no corroboration; he argues that without the disciplinary reports themselves there can be no assurance that the allegations were substantiated. We disagree.

A hearing examiner "need not observe the rules of evidence observed by courts" at a classification hearing. G. L. c. 30A, § 11(2), inserted by St. 1954, c. 681, § 1. See 803 Code Mass. Regs. § 1.19(1) (2002); Doe, No. 10304, supra at 312. He may

admit and give probative effect to that evidence "which reasonable persons are accustomed to rely in the conduct of serious affairs."  G. L. c. 30A, § 11(2), inserted by St. 1954, § 681, § 1.  The examiner must "assess the reliability of the exhibits introduced."  803 Code Mass. Regs. § 1.21(1)(g) (2002).  See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 638 (2011) (Doe, No. 10800).  Hearsay, even multilevel hearsay, may be admissible at classification hearings.  See Doe, No. 10304, supra.  "[T]o determine the reliability of . . . multi-level hearsay statements, [one] look[s] to the circumstances under which [the statements] were made."  Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 649 (2012), quoting from Edward E. v. Department of Social Servs., 42 Mass. App. Ct. 478, 484 (1997).  The disciplinary report history that appears in Doe's classification records satisfies this measure of reliability.

When a disciplinary report is filed against a prisoner, prison officials must conduct an initial review of the allegations of misconduct.  103 Code Mass. Regs. § 430.09 (2006).  Only those disciplinary reports that are founded proceed to a hearing, see 103 Code Mass. Regs. § 430.10(1) (2006), which is assigned to an impartial hearing officer to

determine the inmate's guilt or innocence.[6]  See 103 Code Mass. Regs. § 430.13(1), (6) (2006).  If proved by a preponderance of the evidence, the hearing officer may find the inmate guilty of the allegations contained in the disciplinary report.  103 Code Mass. Regs. § 430.16(1) (2006).  If a charged inmate is found guilty of the disciplinary report (either by plea, an admission of guilt, or upon a finding of guilt by the hearing officer) only then will "all reports, notices, correspondence, requests and any other related documents . . . be kept in the inmate's institutional and central office records."  103 Code Mass. Regs. § 430.17(4) (2006).  "Dismissed and not guilty reports may be kept for the specific and exclusive purposes of, and may only be used for research, officer training and statistical data."  103 Code Mass. Regs. § 430.20 (2006).  Given this indicia of reliability, we conclude that it was reasonable for the examiner to admit and credit the disciplinary report incidents documented in Doe's classification records.  See Doe, No. 10304, 70 Mass. App. Ct. at 313 (hearing examiner did not err by crediting statements in classification report).

---

[6] The charged inmate will be provided reasonable notice of the hearing date and time, see 103 Code Mass. Regs. § 430.11(1), (3) (2006), and may appear with or without counsel, 103 Code Mass. Regs. § 430.12(1) (2006).  He may confront and cross-examine the evidence against him, and may call witnesses and present evidence on his or her own behalf.  See 103 Code Mass. Regs. § 430.14(3), (4) (2006).

The examiner also properly confined his use of the information.  See Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 777 (2008) (Doe, No. 89230) ("While a hearing examiner may not consider a [continuation without a finding (CWOF)] a 'prior offense' in relation to the classification factor that looks at the dates, number, and nature of prior offenses,[footnote omitted] he is permitted to take into account the misconduct underlying the CWOF on the issue whether the sex offender's conduct was repetitive and compulsive").  He did not rely on these incidents of sexual misconduct to determine Doe's criminal history under G. L. c. 6, § 178K(1)(b)(iii), and 803 Code Mass. Regs. § 1.40(9)(b) (2002), but, rather, limited his use of it to an assessment of Doe's repetitive and compulsive sexual misconduct. See Doe, No. 89230, supra.  There was no error.

3.  Police report of acquitted conduct.  Doe next asserts the hearing examiner impermissibly considered a police report that recounted allegations of sexual abuse of which he was acquitted.  We agree that, generally, "a non-eyewitness police report, standing alone, cannot constitute substantial evidence within the meaning of G. L. c. 30A."  Doe, No. 10304, supra at 312.  "However, particular narratives related therein may be admissible in board hearings depending on the general plausibility and consistency of the victim's or witness's story,

the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like." Id. at 312-313. The police report at issue here, which relates a detailed and plausible incident of sexual assault, satisfies these criteria. See ibid.

In the police report, the victim, who is identified by name, does not hide the fact that she had been introduced to her assailant the night before and had gone out drinking with him but explains that he lingered in her building late into the evening and would not leave. The victim tells how she opened the door to her apartment in order to let him use the telephone to call for a ride, which explains not only her attacker's presence in the apartment but why the door, through which her dog ran out, would be left ajar. The victim recounts how the attacker left to retrieve the dog after pushing her onto the bed -- another highly conceivable detail, as the dog's presence in the hallway at that hour might alert the attention of neighbors. Finally, lending further plausibility to her claim, the victim describes how she then swiftly locked the bedroom door and telephoned for the police before the return of her attacker, who then ran off before the police arrived.

In addition, as found by the examiner, the conduct that the victim described was consistent with Doe's other sexual assaults. Like Doe's 2011 conviction for "grop[ing]" the

"crotch area" of a female correction officer and his earlier disciplinary reports for both "brush[ing] his hand against a female correctional officer's buttocks" and "grabb[ing] a female nurse's . . . crotch area," the assailant here grabbed the victim's "breasts and vagina" over her clothing.  Compare Doe, No. 10800, 459 Mass. at 638-639 (hearing examiner did not err in crediting uncorroborated police reports containing victim statements because they bore indicia of reliability; they were "sufficiently detailed" and displayed a "common course of conduct"); Doe, No. 10304, 70 Mass. App. Ct. at 313 (hearing examiner did not err in crediting "[t]he victim's story, contained in police reports, [as it] was plausible, consistent[,] . . . highly detailed . . . [and] corroborated by the petitioner's testimony").

Contrary to Doe's assertion, the fact that Doe was ultimately acquitted of the criminal charges does not render the report inadmissible or unreliable.  See Soe, Sex Offender Registry Bd. No. 252997 v. Sex Offender Registry Bd., 466 Mass. 381, 396 (2013) (Soe, No. 252997).  Examiners have been permitted to consider other instances of conduct that did not result in a conviction.  An examiner may consider, for example, uncharged conduct, see Doe, No. 10800, supra at 638 (allowing consideration of police reports even though the plaintiff "neither admitted to nor was convicted of forcible rape"), and

conduct underlying a matter resulting in a continuation without a finding, see Doe, No. 89230, 452 Mass. at 776-777 (allowing consideration of alleged sexual misconduct where resulting charge was continued without a finding and later dismissed). Examiners may also rely on the facts underlying pending criminal matters; they need not await their final adjudication.[7]  See Soe, No. 252997, supra at 387 ("[W]hen a sex offender is awaiting trial on other sex offense charges, the hearing examiner may consider the facts underlying the alleged sex offenses if proved by a preponderance of the evidence").  Moreover, the examiner is not required to reopen the classification hearing or set aside his classification determination simply because the plaintiff was subsequently acquitted of the charge.  Id. at 396.  This is because "[a]n acquittal at a criminal trial simply means that a jury did not find the defendant guilty of the charged sex offense beyond a reasonable doubt; it does not demonstrate that the evidence at the classification hearing did not warrant a finding by a preponderance of the evidence that the sex offender committed the charged offense."  Ibid.

---

[7] We note there is at least one situation where the nonfinal nature of a conviction could matter:  where an individual was convicted of a sex offense, SORB exercised jurisdiction based on that conviction, and that conviction was reversed or vacated on appeal.

The difference between the burden of proof at a criminal trial and the burden of proof required, for instance, at a probation revocation hearing is the reason why the Commonwealth is not barred at a probation revocation hearing from basing the revocation on "evidence of a violation of law of which a probationer has been found not guilty". Commonwealth v. Holmgren, 421 Mass. 224, 225 (1995). A similar distinction exists here. "In a criminal case, of course, the Commonwealth must prove the elements of each crime charged beyond a reasonable doubt." Id. at 225-226. By comparison, at Doe's classification hearing the examiner could credit those facts that are proven by a preponderance of the evidence. See Soe, No. 252997, supra at 396, quoting from Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 103-104 (1998) ("'preponderance of the evidence standard, combined with a requirement that that the fact finder make detailed findings to demonstrate that close attention has been given to the evidence and that the appropriateness of the classification has been shown,' is standard that must be met in board classification decisions"). Given this distinction, we see no error with the examiner crediting allegations of sexual misconduct of which Doe was ultimately acquitted.[8] See

_____

[8] Here again, the examiner properly did not rely on this evidence to calculate Doe's criminal history -- using it instead

Commonwealth v. Holmgren, supra at 225 ("The reason for this result lies in the difference in the burden of proof in the two proceedings").

4. Motion for expert funds. Doe challenges the hearing examiner's denial of his motion for expert funds. However, he failed to meet his burden "to establish the reason why [expert] funds are needed." Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 624 (2010) (Doe, No. 151564 I). "A general motion for funds to retain an expert to provide an opinion on the sex offender's risk of reoffense, without more, would appear to be insufficient." Doe, No. 89230, 452 Mass. at 775. Here, Doe did nothing more than say that he is "almost 50 years old." He failed to tie his age, forty-nine years at the time of the hearing, to a particular need for an expert. Moreover, Doe was no more specific in his request for funds at the hearing itself -- arguing only that his "funds motion is a Constitutionally based motion" and that he was entitled to funds "as a matter of due process" because he "is indigent" and "[un]able to afford the assistance and testimony of an expert witness in sex offender recidivism."

We are also not persuaded by Doe's assertion that his motion lacked specificity because he filed the motion without

only in the assessment of Doe's repetitive and compulsive behavior. Doe, No. 89230, 452 Mass. at 777.

the benefit of our decision in <u>Doe, Sex Offender Registry Bd</u>.
<u>No. 151564</u> v. <u>Sex Offender Registry Bd</u>., 85 Mass. App. Ct. 1,
10-11 (2014).  At the time that he filed his motion, Doe at
least had the benefit of <u>Doe, No. 151564 I</u>, <u>supra</u> at 621, which
noted that "numerous scientific and statistical studies,
published during the last decade, . . . conclude age is an
important factor in determining the risk of recidivism."  Doe
has failed to articulate, the "reason or reasons, connected to a
condition or circumstance special to him, that he needs to
retain a particular type of expert[,]" therefore, we conclude
the examiner did not err in his denial of Doe's request for
expert funds.  <u>Doe, No. 89230</u>, <u>supra</u>.

<u>Judgment affirmed</u>.