NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-177

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 527405

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his final classification by the Sex Offender Registry Board (board) as a level two sex offender.  He argues that the hearing examiner failed to properly apply the regulatory factors, and that the decision is not supported by substantial evidence and was arbitrary and capricious.  We affirm.

1.  Governing offense.  On February 27, 2019, the victim, Doe's girlfriend of two months, reported to police that she had been sexually assaulted by Doe.  The victim went to Doe's trailer to end their relationship.  An argument followed, and Doe took the victim's wallet, keys and phone, and wrapped his arm around her to prevent her from leaving the trailer.  The victim tried to push him away and was "hitting him in the back

telling him to put her down." The victim also repeatedly told Doe that she did not want to have sex. Doe threw the victim over his shoulder, carried her to his bedroom, and penetrated her vagina with his penis. The victim left Doe's trailer and reported the assault to the police. She also underwent a sexual assault examination at a local hospital. A deoxyribonucleic acid (DNA) profile developed from a vaginal swab taken from the victim was later linked to Doe.

Doe was arrested and charged with rape and kidnapping. He pleaded guilty to the lesser included offense of indecent assault and battery on a person aged fourteen or older and kidnapping, and was sentenced to two and a half years in the house of correction, with six months to serve and the balance suspended for a period of two years.[1]

2. Other offenses. On May 20, 2007, Doe was arrested in Rhode Island for masturbating on a public street. He was charged with disorderly conduct, convicted, and received a six month probation sentence. As part of the Rhode Island sentence, Doe was ordered to undergo a sex offender evaluation with follow up treatment if deemed necessary. In addition, Doe has a lengthy criminal history in Massachusetts, Rhode Island, and

_____

[1] Doe also received a two year term of probation on the kidnapping charge. Both the suspended sentence and the probationary sentence terminated on January 7, 2022.

2

Georgia from 1990-2019.  Offenses include crimes of violence, drug and alcohol offenses, property crimes, and motor vehicle offenses.

3. <u>Hearing examiner's decision</u>.  The board notified Doe of his duty to register as a level three sex offender.  Doe requested a hearing to challenge the board's decision. Following a hearing, and after applying the regulatory factors as promulgated under 803 Code Mass. Regs. § 1.33 (2016), the hearing examiner found that Doe presented a moderate risk to reoffend and a moderate degree of dangerousness, "such that a public safety interest is served by public access and Internet publication of his registry information."  He ordered that Doe register as a level two sex offender.

In reaching this conclusion, the hearing examiner applied the following high risk and risk elevating factors:  factor 2 (repetitive and compulsive behavior), factor 16 (public place), and factor 20 (diverse sexual behavior).[2]  The hearing examiner also applied factor 10 (contact with the criminal justice system), factor 11 (violence unrelated to sexual assaults), and factor 13 (non-compliance with community supervision).  The hearing examiner applied factor 9 (alcohol and substance abuse)

---

[2] The hearing examiner's application of factors 2 and 20 were based on both the underlying sexual assault and the 2007 disorderly conduct conviction; factor 16 was based on the disorderly conduct conviction.

3

based on Doe's history of charges for drug and alcohol related crimes, and Doe's intoxication during the underlying sexual assault. Finally, based on his finding that the governing offense included penile vaginal penetration of an "extrafamilial victim" (Doe's girlfriend), the hearing examiner considered factor 7 (relationship between the offender and victim) and factor 19 (level of physical contact).

The hearing examiner also considered several risk mitigating factors. At the time of his classification, Doe was serving a two year term of probation. However, because of his "demonstrated difficulty with adhering to the terms of previously sentenced probation," the hearing examiner gave moderate weight to risk mitigating factor 28 (supervision by probation or parole). The hearing examiner gave full weight to factor 30 (advanced age) because Doe was fifty years old at the time of classification.

Finally, the hearing examiner considered additional information submitted by Doe. As to risk mitigating factor 33 (home situation and support system), the hearing examiner considered nine letters from Doe's family and friends, as well as Doe's girlfriend's testimony at the hearing. However, concluding that only one of the letters indicated both knowledge of Doe's underlying sex offense and support of his rehabilitation, the hearing officer found that Doe "moderately

4

established a positive home situation and support system."

While he credited Doe's compliance with probation conditions

related to sobriety, in applying factor 34 (materials submitted

by the sex offender regarding stability in the community), the

hearing examiner gave this risk mitigating factor minimal

consideration because of a 2020 conviction for operating under

the influence of intoxicating liquor.

4. Discussion. "We review a judge's consideration of an

agency decision de novo." Doe, Sex Offender Registry Bd. No.

523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89

(2019). Our review of the board's decision is limited, and we

will not disturb the board's classification unless we determine

"that the decision is in excess of the board's statutory

authority or jurisdiction, is based on an error of law, is not

supported by substantial evidence, or is an arbitrary and

capricious abuse of discretion" (citation omitted). Doe, Sex

Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490

Mass. 759, 762 (2022) (Doe No. 6729). In reviewing the board's

decision, "we 'give due weight to [its] experience, technical

competence, and specialized knowledge'" (citation omitted).

Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender

Registry Bd., 482 Mass. 643, 649 (2019).

a. Risk elevating factors. Doe argues that the hearing

examiner's application of three risk elevating factors was

5

arbitrary and capricious.  First, Doe contends that factor 2 (repetitive and compulsive behavior) was erroneously applied because his 2007 conviction for disorderly conduct in Rhode Island is not a sexual offense.  "Factor 2 is applied when a sex offender engages in two or more separate episodes of sexual misconduct . . . . The board may give increased weight to offenders who have been discovered and confronted (by someone other than the victim) or investigated by an authority for sexual misconduct and, nonetheless, commit a subsequent act of sexual misconduct."  803 Code Mass. Regs. § 1.33(2)(a) (2016).

Here, Doe's disorderly conduct charge stemmed from a police investigation of Doe masturbating on a public street.  In determining a sex offender's risk of reoffense and dangerousness, "the board may consider subsidiary facts that are proved by a preponderance of the evidence."  Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021).  The hearing examiner, relying on the underlying police report, found that Doe was "sanctioned for sexual misconduct in 2007 and then committed a sex offense." The hearing examiner also noted that the Rhode Island judge sentenced Doe "to six months of probation with the condition that he undergo a sex offender program, as necessary."  Where, as here, "involvement with the criminal justice system fails to deter the offender from offending again," we discern no error in

6

the hearing examiner's application of factor 2. See Doe No. 6729, 490 Mass. at 766-767.

For similar reasons, the hearing examiner did not err in applying factor 16 (public place). Factor 16 applies where an offender commits a sex offense "or engage[s] in sexual misconduct" in a public place. 803 Code Mass. Regs. § 1.33(16)(a) (2016). Because Doe's 2007 conviction involved sexual misconduct, the hearing examiner did not err in assigning weight to this factor.

Finally, Doe argues that the hearing examiner misapplied factor 19 (level of physical contact) because Doe was not convicted of rape. A hearing examiner may consider sexual conduct that did not result in a criminal conviction where, as here, the evidence of the conduct is reliable. See Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 79-80 (2015). An examiner "may admit and give probative effect to that evidence 'which reasonable persons are accustomed to rely in the conduct of serious affairs.'" Id. at 76, quoting G. L. c. 30A, § 11 (2). In the context of a sex offender classification hearing, hearsay evidence may be admissible if it bears sufficient indicia of reliability. Doe No. 356011, supra at 77.

In applying factor 19, the hearing examiner properly relied on the victim's statement to police where she reported that when

she tried to leave Doe's trailer, he "physically prevented her" from doing so. Further, the victim "overtly protested and objected to sexual contact but was forced to have sex against her will" and reported that Doe "overpower[ed] her . . . [and] was able to put his penis into her vagina against her will." This was corroborated by testing of a vaginal swab taken from the victim that matched Doe's deoxyribonucleic acid (DNA) profile. Where, as here, the victim's account was "plausible, consistent and highly detailed," and was corroborated by DNA testing, the hearing examiner did not err in applying factor 19. Doe, Sex Offender Registry Bd. No. 10304 v. Sex Offender Registry Bd., 70 Mass. App. Ct. 309, 313 (2007).

b. Stability and community support. Doe next contends that the hearing officer did not properly apply factors 33 (home situation and support network) and factor 34 (stability in the community) because he failed to give them full mitigating weight. "A hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor." Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014). As to factor 33, Doe submitted nine letters of support from family and friends, and his girlfriend testified at the hearing. Although the letters expressed general support of Doe, the hearing examiner found that only one

8

explained how the writer would provide the kind of support identified by factor 33.  See 803 Code Mass. Regs. § 1.33(33)(a) (2016).  Moreover, the hearing examiner found that three of the letters did not indicate the author's "knowledge of [Doe's] sexual offending history," and, importantly, that Doe's girlfriend's testimony at the hearing that she "does not believe [the sexual assault] occurred" reflected an "unwillingness to accept the circumstances of the governing sex offense."  Because "the examiner's detailed written decision was balanced and fair," see Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 813 (2006), we discern no error.

Similarly, the hearing examiner did not abuse his discretion in ascribing moderate weight to factor 34 (stability in the community).  This factor  requires the board to give "mitigating consideration to materials submitted by the offender that demonstrate stability in the community. . . . including . . . sustained sobriety."  803 Code Mass. Regs. § 1.33(34)(a) (2016).  The hearing examiner considered Doe's compliance with probation conditions to abstain from alcohol and undergo regular screenings, and his girlfriend's testimony that Doe did not consume alcohol after moving into her home in May 2020.  However, the hearing officer noted that Doe was convicted of a second offense of operating under the influence of liquor in 2020.  Because the concept of stability inherently includes a

time element, and Doe's sobriety was relatively recent, the hearing examiner did not abuse his discretion in ascribing "minimal" weight to factor 34.

c. Substantial evidence. Finally, Doe contends that his level two classification was not supported by clear and convincing evidence because the hearing examiner took a "checklist approach" in determining his risk of reoffense, dangerousness and whether Internet publication of his biographical information was warranted. We are not persuaded. "Where the board determines that the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information, it shall give a level 2 designation to the sex offender." G. L. c. 6, § 178K (2) (b).

As discussed supra, the hearing examiner explained his analysis of risk elevating factors and his weighing of applicable risk-mitigating factors. Where the classification is supported by "such evidence as a reasonable mind might accept as

adequate to support a conclusion," G. L. c. 30A, § 1 (6), we do not disturb the board's decision.

Judgment affirmed.

By the Court (Rubin, Blake & Shin, JJ.[3]),

Assistant Clerk

Entered:  April 4, 2024.

---

[3] The panelists are listed in order of seniority.