NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-430

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 527664

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his final classification by the Sex Offender Registry Board (SORB or board) as a level two sex offender. Doe argues that the hearing examiner (examiner): (1) abused his discretion by considering hearsay evidence that lacked indicia of reliability; (2) abused his discretion by misapplying relevant risk-elevating factors and failing to apply and weigh relevant risk-mitigating factors; and (3) erred in rejecting Doe's expert witness opinion testimony. We affirm.

Background. On October 12, 2018, a twenty-seven year old woman (hereinafter, the victim) reported to the Brewster police department that Doe, age thirty-five at the time, sexually assaulted her while she was at work. Doe and the victim worked together at a farm. In her statements to the police (contained

in police reports in evidence), the victim explained that around 11:30 A.M. on October 10, 2018, she was on her hands and knees working the irrigation lines at the farm when she heard someone, identified as Doe, "coming up directly behind her."  She reported that Doe "put his left hand over [her] mouth . . . then used his other hand to grab [her] right arm and pulled it behind her back."  Doe then pinned the victim to the ground, "pulled [her] pants down and tried to have sex with [her]."  The victim stated that Doe "was struggling to penetrate her vagina with his penis, but that she could feel him trying."  Doe "was having a hard time with it and he did not finish."  The victim tried to tell him that she was menstruating, hoping it would make him stop.  Eventually, Doe "got frustrated" and walked away saying, "[I]t wasn't worth it anyways."  Immediately after the assault, the victim saw Doe leave work in a gray Chevrolet pickup truck "that he usually drives."  When asked about potential witnesses to the attack, the victim stated that no one else on the farm was in the area at the time, but that she told her aunt about the assault one day after the incident.

The victim spoke with the police again about three months after she first reported the incident.  In this second interview, the victim again stated that Doe was "having a hard time" penetrating her during the assault.  She also confirmed that after she told him that she was menstruating to try to stop

2

the attack, Doe anally penetrated her.  The victim stated that on October 12, she had told her primary care physician that she was anally raped.

Doe pleaded guilty to one count of assault with intent to commit rape and one count of indecent assault and battery on a person over fourteen, and received a sentence of two years in the house of correction with three years of probation to be served from and after.  One count of rape was nol prossed due to "insufficient evidence of penetration element to sustain burden of proof beyond a reasonable doubt."

In May 2021, SORB notified Doe of his duty to register as a level three sex offender.  Doe requested a hearing, which was held on October 22, 2021, and November 22, 2021.  At the hearing, Doe presented, inter alia, the testimony of expert witness Dr. Leonard Bard, and a letter from Doe's psychiatrist, Dr. Oliver Freudenreich.  Subsequently, the examiner issued a written decision classifying Doe as a level two sex offender. Doe sought judicial review of that decision, see G. L. c. 30A, § 14, and, following a hearing on Doe's motion for judgment on the pleadings, a Superior Court judge denied the motion and affirmed the level two classification.  This appeal followed.

Discussion.  1.  Standard of review.  A reviewing court may set aside a decision of the board if it determines "that the decision is unsupported by substantial evidence or is arbitrary

or capricious, an abuse of discretion, or not in accordance with law" (citation omitted).  Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 801 (2022).  The reviewing court shall "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it."  Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006), quoting G. L. c. 30A, § 14 (7).  Doe therefore "bears a heavy burden of establishing that the [board]'s decision was incorrect" (citation omitted).  Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021) (Doe 3177).

2.  Classification determination.  a.  Hearsay evidence. Doe claims that the examiner abused his discretion in considering hearsay evidence contained in the police reports. We disagree.  "A hearing examiner is not bound by the rules of evidence applicable to court proceedings."  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 638 (2011) (Doe 10800).  See 803 Code Mass. Regs. § 1.18(1) (2016).  "In the context of a sex offender classification hearing, hearsay evidence may be admissible if it bears sufficient indicia of reliability."  Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019) (Doe 523391).  In evaluating whether hearsay

4

evidence is substantially reliable, "[f]actors that the examiner should consider include 'the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like.'"  Id., quoting Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 78 (2015) (Doe 356011).  Where there is an allegation of sexual misconduct that did not result in a conviction for a sex offense, the examiner may consider the facts underlying the charges where such facts are proven by a preponderance of the evidence.  See Doe 3177, 486 Mass. at 754-755.  This court, in turn, asks whether "'it was reasonable for the examiner to admit and credit' the facts described in the hearsay evidence."  Doe 523391, supra, quoting Doe 356011, supra at 77.

Here, the examiner found that the victim's statements made to the police were reliable and contained sufficient detail to prove, by a preponderance of the evidence,[1] that Doe anally

---

[1] On appeal, Doe argues that an examiner should use the higher clear and convincing evidence standard, rather than the lower preponderance of the evidence standard, when considering hearsay evidence to make a determination concerning the governing offense.  At oral argument, counsel for Doe cited Doe 3177, in support of this claim.  486 Mass. at 754-757 (petitioner challenged standard by which hearing examiner may consider subsidiary facts underlying charges when sex offense

5

penetrated her with his penis.[2]  The victim's initial statement

to the police indicated that she could feel Doe trying to thrust

himself forward into her.  It is arguable that this statement

allowed the examiner to make the reasonable inference that Doe's

thrusting into the victim's anal area resulted in some degree of

penetration.  See 803 Code Mass. Regs. § 1.19(1)(h) (2016)

(duties and powers of examiner include assessing reliability of

exhibits introduced into evidence and drawing all reasonable

inferences therefrom).  Later, however, more information was

presented on this issue.  Specifically, in the second interview,

the victim's statement that Doe anally penetrated her confirmed

the degree of penetration.  See Commonwealth v. Lopez, 433 Mass.

---

unproven at trial).  However, because Doe makes this argument
for the first time on appeal, it is waived.  See Carey v. New
England Organ Bank, 446 Mass. 270, 285 (2006) ("An issue not
raised or argued below may not be argued for the first time on
appeal" [citation omitted]).  Even if we were to consider this
argument, it would be unavailing.  Contrary to Doe's claim, Doe
3177, supra at 757, upholds the existing subsidiary fact
standard:  "[I]n the interest of accurately determining the risk
of reoffense and dangerousness to the public, the board may
consider subsidiary facts that are proved by a preponderance of
the evidence, including subsidiary facts resulting in
acquittals, where those facts are nonetheless proved by a
preponderance of the evidence."

[2] Doe also contends that the examiner's conclusion that Doe
anally raped the victim was improper because the rape charge was
nol prossed due to "insufficient evidence of penetration."  We
disagree.  See Doe 3177, 486 Mass. at 754-755 (where allegation
of sexual misconduct does not result in conviction for sex
offense, examiner may consider facts underlying charges where
such facts proven by preponderance of evidence).

6

722, 726-727 (2001) (elements of rape include "sexual intercourse," defined as "penetration of victim, <u>regardless of degree</u>," and "by force and against his will" [emphasis added]).

Of further note, the victim stated in both interviews that she told Doe that she was menstruating to try and stop the attack. The evidence before the examiner contained added elements of corroboration. For example, the victim's aunt confirmed that one day after the assault, the victim told her that Doe had raped her. The victim also told her primary care physician that she was anally raped. Additionally, the owner of the farm where the victim and Doe worked confirmed that Doe left work around noon on the day of the assault, which is consistent with the victim's statement that the assault occurred around 11:30 A.M. Finally, there are no obvious "[i]ndicia of unreliability" surrounding the victim's statements, such as the "failure to identify the source of information, a lack of detail, and a lack of information about the circumstances in which the statements were made." Doe 523391, 95 Mass. App. Ct. at 89-90. It was reasonable in these circumstances for the examiner to admit and credit the victim's corroborated statements and conclude that Doe anally penetrated her. See Doe 3177, 486 Mass. at 754-755.

b. Application of the statutory and regulatory factors. Doe contends that the level two classification was not supported

7

by substantial evidence because the examiner abused his discretion in applying risk-elevating factors 7 (Doe's relationship to the victim), 9 (alcohol and substance use), 10 (contact with the criminal justice system), 12 (behavior while incarcerated), 16 (assault taking place in a public place), and 19 (level of physical contact). Doe also claims that the examiner abused his discretion in failing to apply and weigh risk-mitigating factors 28 (supervision by probation or parole), 33 (home and support systems), and 37 (additional information related to the nature of the sexual behavior). See 803 Code Mass. Regs. § 1.33 (2016). These claims are unavailing.

When reviewing a decision by the board, we "must determine whether the decision is supported by substantial evidence" (citation omitted), Doe 10800, 459 Mass. at 632, which is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting G. L. c. 30A, § 1 (6). "[O]ur review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion . . . but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotation and citation omitted). Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 110 (2014) (Doe 68549). See Doe 10800, supra at 633 ("It is the province of the board, not this court, to weigh the credibility of the witnesses and to resolve

8

any factual disputes").  Furthermore, the "hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor."  Doe 68549, supra at 109-110.

Here, the record reveals a comprehensive and reasonable analysis and weighing of the various risk-elevating factors.  As to factor 7 (Doe's relationship to the victim), the relationship between Doe and the victim is extrafamilial, and therefore the examiner applied this factor as it relates to his increased risk of reoffense.  See 803 Code Mass. Regs. § 1.33(7)(a)(2).  It is uncontested that Doe and the victim were coworkers and knew each other before the offense.  Thus, we discern no abuse of discretion in the examiner's application of factor 7.  As to factor 9 (alcohol and substance use), the examiner applied minimal weight, finding that Doe has a history of substance use.  The record demonstrates that Doe has used alcohol and marijuana, and therefore we discern no error therefrom.  Concerning factor 10 (contact with the criminal justice system), the examiner applied minimal weight.  He detailed Doe's criminal history apart from the governing offense, and distinguished among convictions, arrests, and dispositions other than conviction.  Because the record supports the examiner's conclusion, he did not abuse his discretion in applying this factor.

9

Regarding factor 12 (behavior while incarcerated), the examiner applied minimal weight due to the three disciplinary reports that Doe received during his incarceration. Viewing these reports in the record before us, we discern no error. As to factor 16 (public place), the examiner applied this factor, finding that the victim "was fixing an irrigation line that goes to a row of trees on a farm" when she was assaulted, and therefore the offense occurred "in an area that was outside and open to others." Given the victim's statements to the police, we agree that the examiner properly applied this factor. Finally, the examiner applied factor 19 (level of physical contact), finding that Doe "anally penetrated the [v]ictim with his penis, thus, increasing the weight applied to this risk elevating factor." For reasons discussed supra, the record supports the examiner's application of this factor.

In terms of the risk-mitigating factors applied, the examiner's decision reflects an appropriate consideration and application of the factors based on the record. As to factor 28 (supervision by probation or parole), the examiner considered that Doe would be on both parole and probation after his release from incarceration, finding that "this dual supervision adds mitigation, and I apply this factor to [Doe's] risk of [reoffense] and dangerousness." The examiner also considered, pursuant to factor 37 (additional information related to the

10

nature of the sexual behavior), Doe's past and future mental health treatment with Dr. Freudenreich as a mitigating factor. The examiner did not specify the amount of weight given to these factors. While not required, it is helpful to our review if a hearing examiner specifies whether he or she applies a threshold, moderate, high, or some other degree of weight to each applied factor. See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 143 (2019) (Doe 23656). Nevertheless, here we are satisfied that Doe's level two classification was supported by substantial evidence.

Concerning factor 33 (home and support systems), the examiner conducted an extensive review of the numerous support letters and testimony from Doe's support group, finding that Doe "has a very high level of support from family and friends, and therefore, I give full weight to [factor 33] as it relates to [Doe's] risk of [reoffense]." Contrary to Doe's argument, the examiner was not required to consider the impact that Doe's support network has on his level of dangerousness because the application of the factor is limited to the offender's risk to reoffend. 803 Code Mass. Regs. § 1.33(33)(a) ("The likelihood of reoffense is reduced when an offender is supported by family, friends, and acquaintances").

11

c. Doe's expert opinion. Doe argues that the examiner erred by ignoring Dr. Bard's opinion testimony that Doe poses a low risk to reoffend. We disagree.

In the context of a SORB classification hearing, a hearing examiner must consider the "evaluative reports, empirically-based risk assessment instruments, or testimony from a licensed mental health professional that discuss psychological and psychiatric issues . . . as they relate to the offender's risk of reoffense." 803 Code Mass. Regs. § 1.33(35)(a). See Doe 23656, 483 Mass. at 135. However, the "opinion of a witness testifying on behalf of a sex offender need not be accepted by the hearing examiner even where the board does not present any contrary expert testimony." Doe 68549, 470 Mass. at 112, quoting Doe 10800, 459 Mass. at 637.

Here, the examiner did not "ignore" Dr. Bard's expert testimony. To the contrary, after noting that the STATIC-99R evaluation conducted by Dr. Bard addressed some, but not all of the board's regulatory factors, the examiner nonetheless afforded the tests "some weight" to the extent they served as "a general indicator of risk of reoffense." It is evident from the four-page review of Dr. Bard's testimony that the examiner carefully considered Dr. Bard's testimony. We discern no error.

Conclusion. We conclude that the hearing examiner's determination that clear and convincing evidence supported a

12

level two classification was supported by substantial evidence. See Doe 10800, 459 Mass. at 632-633.

Judgment affirmed.

By the Court (Neyman, Hershfang & Hodgens, JJ.[3]),

Assistant Clerk

Entered:  May 6, 2024.

---

[3] The panelists are listed in order of seniority.

13