NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-328

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 526712

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a judgment entered in the Superior Court affirming his classification by the Sex Offender Registry Board (board) as a level three sex offender. Doe's primary argument is that the hearing examiner acted arbitrarily and capriciously when she relied on hearsay contained in documentary evidence, including, among other things, a police report, which recounted allegations that Doe had beaten and raped his former girlfriend and mother of his child. Doe also claims that the examiner improperly gave minimal, rather than full weight, to risk-mitigating factor 33 (home situation and support systems). We conclude that the hearsay statements at issue were sufficiently reliable, and they

reasonably support both the hearing examiner's determination that the rape had occurred and her ultimate conclusion that Doe should be classified as a level three offender.  We further conclude that the examiner properly assessed the evidence regarding factor 33.  We therefore affirm the judgment.

Background.  We summarize Doe's predicate sexual offenses, which involved two victims, who were strangers (victims one and two), and the former girlfriend (hereinafter victim three), as follows.  In December 2017, when Doe was twenty-seven years old, two women (victims one and two) reported to police that Doe came up behind them while they were shopping in a convenience store and rubbed his genitals against their buttocks.  He threatened "to fuck the shit" out of them and made similar comments as the two fled from the store.  The police apprehended Doe, who was intoxicated, shortly after the women made their report.  Doe subsequently was charged with two counts of indecent assault and battery.  A jury found Doe guilty on the assault and battery count related to one of the women and not guilty on the count related to the other.[1]  Thereafter, in December 2019, the board classified Doe as a level one (low risk) sex offender.

_____

[1] Doe received a split sentence of two and one-half years in the house of correction with twelve months to serve and the balance suspended.

2

On August 27, 2020, victim three walked into the Boston police department and reported that Doe had come to her house unannounced, started an argument, beat her, took off her clothes, and then raped her. The officer who took the report observed that the victim had bruises all over her chest and head, including a black eye. Another officer took photographs of the injuries. Victim three then sought treatment at a local clinic. The following day, she reported the same allegations to a different police detective and then, on August 31, 2020, she obtained an abuse protection order against Doe. In the affidavit submitted in support of the application for the order, the victim averred that Doe had beat and raped her. Thereafter, Doe was charged with one count of rape and one count of assault and battery on a family or household member. The Commonwealth entered a nolle prosequi on the latter charge and then dismissed the rape charge in October 2020 after victim three recanted her allegations. In a letter addressed, "to whom it may concern," dated October 13, 2020, victim three claimed that, on the day of the alleged assault, she had consensual sex with Doe and that the injuries she had sustained were from falling down the stairs.

Based on victim three's report of rape, the board notified Doe that he would be required to register as a level three offender. Doe challenged the reclassification and was granted a

de novo hearing pursuant to G. L. c. 6, § 178L.  At the time of the hearing, Doe was in custody pending trial on several firearms charges.  Neither party called any witnesses, and the hearing proceeded on the basis of documentary evidence, which included a Boston police report that described victim three's allegations.

The examiner found that victim three was raped and beaten as she originally reported to the police, despite the fact that Doe was not tried for the offenses and victim three had recanted her prior statements.[2]  The examiner noted that victim three reported the rape and physical abuse in detail the day after the incident occurred and disclosed the same information to two different officers.[3]  In addition, she made the same statements

_____

[2] The examiner was aware of her obligation under 803 Code Mass. Regs. § 1.18 (2016) and our case law to determine whether the hearsay evidence was reliable before giving it probative effect.

[3] The examiner summarized the information contained in the police report as follows:

"[Victim three] stated that the day before (8/26/20) while she was home, [Doe] came to her house, unannounced.  He started arguing with her and then became violent and began hitting her.  He then threw her on the bed, held her down, pulled down her shorts and ripped off her underwear.  Victim 3 attempted to keep her legs closed, but [Doe] was able to pry her legs open forcefully with his hands.  He then penetrated her vagina with his penis against her will.  She asked him to stop multiple times; he refused and continued to penetrate her 'for about ten minutes.'  He finally let her up and continued to hit her with his fist, stating 'he was going to beat it out of her.'  He again

4

in her affidavit submitted in support of an abuse prevention order, which she was granted.[4]  The examiner also observed that victim three was granted a prior abuse prevention order against Doe in 2018, which demonstrated a pattern of domestic violence. Furthermore, although victim three asserted that she wanted to recant her original statement to police, she provided no explanation as to why she fabricated the original allegations. The examiner did not find victim three's recantation dispositive given the nature of the countervailing evidence as set forth above.  To the contrary, the examiner found victim three's original statements to be "credible and substantially reliable," and therefore found as fact that Doe raped and beat her for purposes of the overall analysis of the risk and danger Doe poses.[5]

---

forced her back on the bed, climbed on top of her and forcefully raped her a second time (penile/vaginal penetration)."

[4] In her affidavit, victim three wrote,

"He came to my house when I told him not to.  He had a key from before, and he beat me multiple times in my head, face, body and he raped me.  He said he would kill me.  I fear for my life.  If he gets released from jail he will kill me.  He said he doesn't care if he would do life in jail as long as I would be dead."

[5] The examiner reasoned as follows:
"Despite the dismissal/nolle prosse by the Commonwealth and her recantation of her prior statements, I find Victim 3 was raped and physically beaten by the Petitioner as she originally alleged.  She reported the rape and physical

The examiner further found that Doe's alleged assault on victim two had in fact occurred,[6] and considered his nonsexual criminal history, which included convictions of assault and battery on a police officer, armed robbery, and carrying a loaded firearm without a license. The examiner then determined that the following eleven risk-aggravating factors applied: factor 2 (repetitive and compulsive behavior; "increased weight"); factor 7 (stranger and extrafamilial victims; "increased weight"); factor 8 (weapons, violence, or infliction

_____

abuse the next day. She reported the same information to two different officers and further detailed the event in her affidavit for an abuse prevention order, which she was granted. She further was granted a prior abuse prevention order in 2018, also against [Doe], demonstrating a pattern of domestic violence. I acknowledge that Victim 3 later told the Court that she 'wanted to recant her original statement to the police that she made on August 27, 2020 about [Doe],' however, she provided no explanation as to why she fabricated the original allegations. I do not find that dispositive given the nature of the countervailing evidence as set forth above. 'Inconsistent statements by a hearsay declarant may or may not detract from the reliability of the hearsay, depending on the circumstances of those statements.' Doe 523391 v. SORB, 95 Mass. App. Ct. 85, 90 (2019).

"I hereby find her statements to be credible and substantially reliable. The fact that she later recanted does not sway me from the consistent and reliable facts she initially reported. I therefore find as fact that the Petitioner raped and beat this woman and consider her a Victim in my overall analysis of the risk and danger he poses."

[6] Doe does not challenge this finding nor does he contest the examiner's additional finding that he was guilty of the pending firearm charges.

6

of bodily injury); factor 9 (alcohol and substance abuse); factor 10 (contact with the criminal justice system); factor 11 (violence unrelated to sexual assaults); factor 13 (noncompliance with community supervision; "increased weight"); factor 16 (public place); factor 19 (level of physical contact; "increased weight with regard to dangerousness"); factor 21 (diverse victim type); and factor 22 (number of victims).  The examiner also found, based on evidence submitted by Doe, that three risk-mitigating factors applied:  factor 28 (supervision by probation; "minimal weight"); factor 32 (sex offender treatment; "minimal weight"); and factor 33 (home situation and support systems; "minimally consider[ed]").  Based on these factors, the examiner found by clear and convincing evidence that Doe presents a high risk of reoffense and dangerousness and that a public safety interest is served by Internet publication of his registry information.  As previously noted, the examiner's decision was adopted by the board and subsequently upheld by a judge of the Superior Court who, on the parties' cross motions for judgment on the pleadings, dismissed Doe's complaint.

Discussion.  "We review a judge's consideration of an agency decision de novo."  Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019) (Doe, No. 523391).  Our review of the board's decision is

limited, and we will not disturb the board's classification unless "we determine that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011) (Doe, No. 10800). In reviewing the board's decision, "[w]e give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it" (quotation and citation omitted). Doe, No. 523391, 95 Mass. App. Ct. at 88.

Doe contends that the hearing examiner's finding that he had in fact raped victim three was arbitrary and capricious because there was no evidence of the rape other than her accusations, which were ultimately recanted, and the police reports documenting the allegations, which he claims lacked the requisite indicia of reliability. He further asserts that, but for the examiner's reliance on victim three's recanted allegations, she could not have applied high risk factor 2 (repetitive and compulsive behavior), or risk-aggravating factors 8 (weapons, violence, or infliction of bodily injury) and 21 (diverse victim type). Nor could she properly give increased weight to factor 19 (level of physical contact).

As Doe acknowledges in his brief, the examiner was not bound by the rules of evidence applicable to court proceedings.

8

See Doe, No. 10800, 459 Mass. at 638.  Hearsay evidence may be admissible at a sex offender classification hearing if it bears sufficient indicia of reliability.  Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 77 (2015).

> "When reviewing an examiner's determination that hearsay evidence is substantially reliable, we ask whether it was reasonable for the examiner to admit and credit the facts described in the hearsay evidence.  Factors that the examiner should consider include the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like" (quotations and citations omitted).

Doe, No. 523391, 95 Mass. App. Ct. at 89.

Here, contrary to Doe's assertion, the examiner reasonably determined that the police reports of the sexual assault against victim three bore sufficient indicia of reliability.  It is well settled that the "lack of criminal conviction does not render information [about a crime] contained within a police report inadmissible" at a classification hearing.  Id. at 90.  In addition, as mentioned in notes 3 and 4 supra, victim three provided a detailed account of the incident and confirmed that the rape had occurred to two police officers and in an affidavit.  Victim three's allegations were also corroborated, at least in part, by her injuries that were visible to the police and photographed.  Accordingly, it was reasonable for the

9

examiner to credit the hearsay evidence that Doe raped and beat victim three.  Given our conclusion, Doe's argument that, because the hearsay evidence was not reliable, risk-aggravating factors 2, 8, and 21 were misapplied, and factor 19 should not have been given increased weight, fails.

Doe also challenges the examiner's reliance on the abuse prevention order that victim three obtained against Doe in 2018. Specifically, he claims that the supporting affidavit lacked sexual assault allegations and expressly stated that nothing physical had occurred between Doe and victim three and, as a result, there was no basis for concluding that Doe had engaged in a pattern of violence.  Although there is evidence that victim three obtained the 2018 protective order following a report to police that Doe had slapped her after he came home intoxicated and started an argument, even if we were to conclude, which we do not, that this factor did not apply, any error is inconsequential.  The examiner's decision is sufficiently supported by the remaining risk-aggravating factors, all of which are based on clear and convincing evidence.

Doe next argues that the examiner erred by giving minimal, rather than full, weight to risk-mitigating factor 33 (home situation and support systems) based on a finding that letters submitted by Doe's mother and one of his friends did not

10

acknowledge his history of sexual offenses.  Doe asserts that this finding was error and points out that his mother's letter stated that raising Doe's classification level would be "a major setback," and his friend's letter was sent directly to Doe's attorney, "who presumably told [the friend] that the letter was for a sex offender classification hearing."  We are not persuaded.  To begin with, it is not clear whether Doe's mother was aware of the degree of Doe's history of committing sexual offenses.  Nor is it reasonable to assume that the friend was informed of the extent of that history, if at all, simply because the friend had contact with Doe's attorney.

Accordingly, we discern no error in giving factor 33 minimal weight.

Judgment affirmed.

By the Court (Ditkoff,
Englander & Smyth, JJ.[7]),

Paul Little

Clerk

Entered:  May 19, 2025.

---

[7] The panelists are listed in order of seniority.